# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 18-1212V
(Not to be Published)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
DALVINDER SINGH BAINS, and          *
GURPAL KAUR BAINS on behalf of      *
K.S.B.,                             *        Special Master Corcoran
                                    *
                                    *        Filed: July 26, 2019
                   Petitioners,     *
        v.                          *        Attorney's Fees and Costs;
                                    *        Reasonable Basis.
SECRETARY OF HEALTH                 *
AND HUMAN SERVICES,                 *
                                    *
                   Respondent.      *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*John Leonard Shipley*, Davis, CA, for Petitioners.

*Heather L. Pearlman*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION DENYING AWARD OF ATTORNEY'S FEES[1]

On August 14, 2018, Dalvinder and Gurpal Bains filed a petition on behalf of their minor child, K.S.B., seeking compensation under the National Vaccine Injury Compensation Program.[2] Petitioners alleged that the influenza ("flu") vaccine K.S.B. received on December 1, 2014, caused him to develop Pediatric Autoimmune Neuropsychiatric Disorder Associated with Streptococcus

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Infections ("PANDAS"), or in the alternative, significantly aggravated the condition. *See* Petition ("Pet.") (ECF No. 1) at 1-2.

Following the filing of medical records, Petitioners voluntarily dismissed the claim on November 13, 2018 (ECF No. 9). I entered an order concluding proceedings on that same day (ECF No. 10).

Petitioners have now filed a motion requesting final attorney's fees and costs, dated May 6, 2019. *See generally* Motion for Fees and Costs, filed on May 6, 2019 (ECF No. 12) ("Fees App."). Petitioners request reimbursement of attorney's fees and costs in the total amount of $15,362.15 (representing $14,882.20 in attorney fees, plus $479.95 in costs). *Id.* at 1; *see also* Ex. 1 to Reply. Respondent reacted to the motion on May 17, 2019, contesting any award of fees and costs on reasonable basis grounds. *See* Response, dated May 17, 2019 (ECF No. 13). Petitioners thereafter filed a Reply on May 24, 2019 (ECF No. 14). The matter is now ripe for disposition.

For the reasons stated below, I find that Petitioners have not established that there was a reasonable basis for their claim. Therefore, I hereby **DENY** Petitioners' motion for attorney's fees and costs.

## BACKGROUND

### I.     Summary of Relevant Medical Facts

*Pre-Vaccine Health History*

K.S.B. was born September 24, 2002, and there were no complications during pregnancy, labor, or delivery. Ex. 1 at 1; Ex. 4 at 22-23. Dr. Sanjiv Midha, a pediatrician in Yuba City, California, cared for K.S.B. throughout his childhood. Ex. 4 at 1-23; *see also* Ex. 5. His well-child examinations from birth to age six evidence no notable complications apart from the typical childhood illnesses (including runny nose, cough, fever, constipation, and an occasional URI). Ex. 4 at 13, 17-23. K.S.B. received all recommended vaccinations from infancy through childhood with no reported adverse reaction. Ex. 2 at 1-2; *see generally* Ex. 4.

The first record filed in this case (which reveals clear evidence of K.S.B.'s psychological and behavioral problems) is from August 11, 2009, when his mother reported to Dr. Midha that K.S.B did not listen, fought with his parents, and lost his temper easily. Ex. 5 at 9. K.S.B. was six years old at the time of the visit. *Id.* Dr. Midha assessed him with oppositional defiant disorder ("ODD") and recommended behavioral modifications (including a visit to a child psychiatrist). *Id.* At a visit in January 2015 (the month after vaccination), a new provider, Dr. Leonard Marks of Sutter Health in Sacramento, California, took note of K.S.B.'s preexisting health history and

identified occasional behavioral problems beginning when K.S.B. was two years old (which included temper tantrums and mild anxiety). Ex. 10 at 22-23. Apart from the above, his past psychological history was normal until he entered the 6th grade, at which time he developed OCD behaviors. *Id.* at 23. Concerns for ADHD were also noted (though it appears this diagnosis was later excluded). *Id.* at 22-23, 29.

Beginning in 2008 (at the age of six), K.S.B. frequently visited his pediatrician, Dr. Midha, with complaints of sore throat, congestion, and occasional nosebleeds. Ex. 5 at 1; *see generally* Ex. 10. He was diagnosed with allergic rhinitis and prescribed a variety of allergy medications. Ex. 5 at 1-8; Ex. 10 at 1-4. K.S.B. continued to complain of congestion and sore throat through 2014, and was prescribed antibiotics to treat recurrent sinus infections. Ex. 10 at 8-12, 14. He also had a history of multiple episodes of pharyngitis and strep throat. *See, e.g.*, Ex. 5 at 35 (3/27/2012 assessment of pharyngitis), 40 (11/8/2012 assessment of pharyngitis), 50 (3/5/2014 visit noting a confirmed pharyngitis diagnosis); Ex. 10 at 12 (8/20/2014 positive strep test), 8-18.

*Receipt of the Flu Vaccine and Course Thereafter*

On December 1, 2014, K.S.B. presented to his pediatrician, Dr. Midha, for a twelve-year-old well-child visit. He received the flu vaccine during this visit, but no adverse reaction was noted thereafter. Ex 4 at 4.[3] Notes from the visit reveal that K.S.B. had a history of anxiety and OCD behavior (as noted earlier). *Id.* Dr. Midha referred him for a psychiatric evaluation (though it appears K.S.B. had been seen by a child psychiatrist prior to the December 2014). *Id.* 2. Indeed, K.S.B.'s documented history of anxiety and OCD are noted in the filed records dating back to 2009 (and possibly earlier). *Id.* at 4; *see also* Ex. 5 at 9; Ex. 10 at 22-24.

Dr. Catherine Brennan, of Community Psychiatry in Davis, California, first saw K.S.B on December 30, 2014. Ex. 13 at 9. A history of OCD was noted as a presenting problem (including excessive instances of handwashing, showering, changing clothes, playing video games, and lashing out), along with mood/sensory issues. *Id.* at 9-10. Dr. Brennan also recorded at least three instances of strep throat (occurring in July, August, and September of 2014 – *before* K.S.B. received the vaccine at issue herein). *Id.* at 13. Upon exam, it was noted that K.S.B. suffered from symptoms related to OCD, ODD, and anxiety disorder. *Id.* at 12, 14. Working diagnoses included OCD and PANDAS (associated with his recurrent strep throat). *Id.* at 14. There was no mention of the flu vaccine during this visit. A follow-up visit with Dr. Brennan in January 2015 echoed her earlier concerns of OCD and PANDAS, but again made no mention of the flu vaccine. *Id.* at 1-8.

K.S.B. received an *additional* strep throat diagnosis on March 11, 2015. Ex. 10 at 29-30. In April 2015, K.S.B had a tonsillectomy, adenoidectomy and nasal endoscopy in hopes that these procedures could help alleviate his recurrent strep tonsillitis (and associated PANDAS). Ex. 11 at

---

[3] After the receipt of this vaccine, K.S.B.'s mother declined all subsequent vaccines. Ex. 4 at 1-2.

2; Ex. 10 at 33-34. However, he suffered yet another episode of strep with PANDAS thereafter on August 14, 2015. Ex. 10 at 31-32.[4]

On September 25, 2015, K.S.B. presented for a follow-up appointment with his psychiatrist, Dr. Brennan. Ex. 13 at 5. Dr. Brennan reported that K.S.B. had experienced two episodes of strep throat since school had started in August (despite the treatment discussed above). *Id.* His OCD symptoms persisted, but his anxiety was noted to be improving. *Id.* The assessment remained strep, PANDAS, OCD and ODD. *Id.*

In October 2015, shortly after the period of time when Petitioners claim K.S.B.'s PANDAS worsened, K.S.B. was seen by Amy Fishman-Smith, a nurse practitioner at the office of Dr. Andreas Kogelnik, M.D. Nurse Fishman-Smith noted that K.S.B. had two positive strep tests in the last five weeks (consistent with the assessment made by Dr. Brennan in September). Ex. 14 at 85. K.S.B. "was doing great" up until that point, but then "reverted back to regressed behavior" (i.e., he refused to leave the house or do his homework) *Id.* Consistent with past treaters, she assessed K.S.B. with strep and PANDAS. *Id.* at 85-86. Follow-up visits with Nurse Fishman-Smith in December 2015 and January 2016, revealed that K.S.B received IVIG treatment for his condition, and his parents reported his symptoms were improving (though, certain OCD symptoms persisted). *Id.* at 87-89. Notes from these visits reveal *no* discussion related to his December 2014 flu vaccine (or any exacerbation related to the same).

From 2016 to 2018, K.S.B.'s condition was monitored by Dr. Kogelnik's office. *See* Ex. 14 at 85-127. Over these two years, Nurse Fishman-Smith reported fluctuations in K.S.B.'s behavior and mood, noting his fatigue, poor diet and occasional bouts of rage. *Id.* at 91 (3/2/2016 visit noting mood changes/rages, but listening and sleeping improving), 99 (10/21/2016 visit revealing another positive strep test and stating "pandas behavior all the way back"). By November 2016, K.S.B.'s caretakers reported that K.S.B.'s symptoms had worsened again (to include exhaustion, refusal to leave the house, and increased OCD behaviors). *Id.* at 100-01. He was assessed with a "serious PANDAS flare" on November 14, 2016, and the sequelae lasted through May 2017. *Id.* at 101, 102-05. In July 2017, K.S.B. was noted to be doing better (following continued IVIG treatment), but his OCD symptoms and anger persisted. *Id.* at 108. From September 2017 to January 2018, he appeared to experience a positive few months (i.e., the anger subsided, he was more engaged with family members, and could concentrate better on schoolwork), but various OCD behaviors continued to linger. *Id.* at 114-17, 121.

---

[4] Around this time, K.S.B.'s treaters authored a letter (which appears to be addressed to K.S.B.'s school teachers) detailing his PANDAS diagnosis and treatment course over the past few months. *See* Ex. 6 at 1-2 (letter dated August 20, 2015). The letter specifically relates K.S.B.'s PANDAS diagnosis to recurrent strep infections and asks school officials to notify his parents should any student be diagnosed with strep in the future. *Id.* at 1-2. The letter makes no mention of the flu vaccine.

## II.      Procedural History

As previously noted, Petitioners filed their claim on August 14, 2018, alleging that K.S.B.'s PANDAS was caused and/or significantly aggravated by his receipt of the flu vaccine on December 1, 2014. The Petition was accompanied by most of the medical records filed herein. *See* ECF No. 1. An additional set of records were filed on September 29, 2018. *See* ECF No. 6.

On October 15, 2018, I held a status conference with the parties (at Petitioners' request), at which time I raised two substantive issues that could bear on the claim's resolution. *See* Order, dated Oct. 15, 2018 (ECF No. 7). First, based on my view of the filed medical records to date, Petitioners' direct causation claim was likely time-barred, as it appeared best supported by the medical record that K.S.B. experienced PANDAS-related symptoms well before August 14, 2015 (three years prior to the claim's filing). *Id.* at 1-2. Second, I expressed concerns regarding the claim's reasonable basis in light of Petitioners' theory that a vaccine administered almost eight months prior to the alleged symptom onset could be causal of <u>any</u> adverse reaction (whether an initiation or exacerbation). *Id.* at 2. I therefore cautioned Petitioners and counsel to be mindful of the claim's reasonable basis (especially given the *lack* of medical record evidence otherwise indicating the vaccine played any role in K.S.B.'s health course). *Id.*

Petitioners filed one additional set of medical records on October 16, 2018 (which proved unhelpful to the claim, and only confirmed my sense that the record did not allow for the conclusion that the vaccine played a role in K.S.B.'s development of PANDAS). *See* ECF No. 8. Counsel thereafter moved to voluntarily dismiss the claim on November 13, 2018 (ECF No. 9), and I issued an order concluding proceedings that same day (ECF No. 10).

## III.     Fees Request

The billing record filed with Petitioners' fees request reveals that counsel began working on K.S.B.'s case on July 24, 2018 – about three weeks before the matter was initiated. Ex. 1 to Fees App. at 1-2. Counsel completed roughly four hours of medical record review (including research relating to PANDAS and its treatment in the Program) prior to filing. *Id.* at 1. From mid-August 2018 until the claim's dismissal in November, the billing log reveals that counsel mainly worked to obtain additional medical records (and attended to the various procedural responsibilities, including responding to orders and communicating with Petitioners and Respondent's counsel). *Id.* at 1-2.

Petitioners' fees request specifically requests that their counsel be awarded $15,362.15[5] in

---

[5] This sum includes the additional $2,281.50 counsel requests for work on the Reply. *See* Ex. 1 to Reply (ECF No. 14-1).

fees and costs associated with his work on the matter. Fees App. at 1; Ex. 1 to Reply.[6] In addition, given the concerns I expressed during the initial status conference (regarding the claim's reasonable basis), Petitioners' motion addressed the claim's underlying deficiencies, and argued that reasonable basis existed for the entirety of the claim's life (up to the point of their voluntary dismissal) based on a variety of arguments.

Specifically, counsel maintains that Petitioners only became aware of their ability to file a vaccine claim in July 2018. Fees App. at 3. In addition, K.S.B.'s mother had conversations with medical providers which led her to believe that K.S.B.'s exacerbation of symptoms in September 2015 were attributable to the December 2014 flu vaccine. *Id.*; *see* Affidavit of Gurpal Bains, filed as Ex. 9 (ECF No. 1-11). Counsel also posited that he reviewed a medical article[7] (and spoke with an "experienced children's psychiatrist" who affirmed its findings) which linked vaccinations to neuropsychiatric disorders. *Id.* at 4.[8] Based on a review of K.S.B.'s available medical records, the medical research (and the conversations with Mrs. Bains), counsel maintains that reasonable basis existed at the time of filing and continued to the claim's dismissal (at which point he determined the claim could not be maintained). *Id.*

Respondent reacted to the motion on May 17, 2019, contesting Petitioners' entitlement to a fee award in the entirety on reasonable basis grounds in light of the Federal Circuit decision in *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632 (Fed. Cir. 2017). *See* Response, filed May 17, 2019 (ECF No. 13) ("Response") at 4-5, 7-9. He argued that Petitioners should be denied fees and costs because the objective evidence submitted does not satisfy the Act's reasonable basis standard. *Id.* at 4-5. Respondent posited that Petitioners' direct caution claim is time-barred given the substantial record evidence indicating that K.S.B.'s symptoms manifested well in advance of the limitations cutoff. *Id.* at 5-6, 7. The significant aggravation claim (relating to an alleged exacerbation of symptoms in September 2015) also lacks reasonable basis, as the record is void of any evidence that K.S.B.'s 2014 vaccine played any role in his worsening of PANDAS over eight months later. *Id.* at 6. All in all, the above deficiencies (coupled with the lack of causal evidence in the medical record), indicate the claim lacked reasonable basis when filed and one was never established. *Id.* at 8-9.

Petitioners thereafter filed a Reply, in which counsel reiterated his views that the objective evidence in the record supported a finding of reasonable basis. Reply, dated May 23, 2019 (ECF

---

[6] Petitioners did not personally incur any costs associated with this matter, and therefore do not request them. *See* Ex. 3 to Fees App. (ECF No. 12-3) (General Order No. 9 Statement).

[7] *See* Ex. 8.

[8] Counsel also stated that he conducted legal research and only found one Program case relating vaccination to PANDAS (which was dismissed following a failed attempt to retain an expert opinion). Fees App. at 4 (citing *Council v. Sec'y of Health & Human Servs.*, No. 13-276V, slip op. (Fed. Cl. Spec. Mstr. June 10, 2014)).

No. 14) ("Reply"). Counsel relied primarily on the arguments forwarded in the initial fees motion, but added that it would be improper to find a lack of reasonable basis based solely on the records filed with the Petition. Reply at 1-2, 3. In so stating, counsel posits that additional sets of medical records filed after the case had commenced shed further light of the claim's deficiencies (and he requested dismissal thereafter once the lack of evidence of aggravation was confirmed). *Id.* at 4-5.[9] As noted earlier, he otherwise maintains that K.S.B.'s medical records (in addition to medical literature support) were enough to maintain a reasonable basis for the claim. *Id.* at 4-5.

## ANALYSIS

### I.      Reasonable Basis Standard

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis"[10] sufficient for a fees award. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4-5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015).

In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances," including all facts relevant to the to the case, as well as the evidence actually supporting the claim itself. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)). The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *See Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258-59 (1991)). Program attorneys are expected to conduct a reasonable pre-filing investigation— including an evaluation of the factual basis for the claim at minimum. *See Allicock*, 2016 WL 3571906, at *4; *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[a] reasonable pre-filing inquiry involves an

---

[9] Along those same lines, Petitioners posit that their significant aggravation claim was arguably timely (based on the accompanying medical records – which they claim indicate an exacerbation of symptoms in September 2015). Reply at 3-4. They do not appear, however, to address the timeliness of the direct causation claim.

[10] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith); Response at 4 n.3 ("Respondent does not challenge petitioner's good faith in bringing this petition.").

investigation of the factual basis for a Program claim *or* the medical support for a vaccine petition")
(emphasis added)).

The Court of Federal Claims recently provided further illumination as to the standards that
should be used to evaluate whether the totality of the circumstances warrant a finding that
reasonable basis existed. *Cottingham v. Sec'y of Health & Human Servs.,* No. 15-1291V, 2017
WL 4546579, at *10 (Fed. Cl. Oct. 12, 2017). As Judge Williams therein stated, a special master
should consider "the novelty of the vaccine, scientific understanding of the vaccine and its
potential consequences, the availability of experts and medical literature, and the time frame
counsel has to investigate and prepare the claim." *Cottingham,* 2017 WL 4546579, at *5; *see also
Amankwaa v. Sec'y of Health & Human Servs.*, No. 17-036V, slip. op., at 9-10 (Fed Cl. June 4,
2018) ("special masters must not consider subjective factors in determining whether a claim
has reasonable basis[,]" and should "limit [their] review to the claim alleged in the petition . . . based
on the materials submitted.") (quoting *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-
555V, 2018 WL 405121, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018)).

## II.   Petitioners' Claim Is Untimely

Petitioners' case was filed on August 14, 2018 – close-in-time to the *presumed* expiration
of the statute of limitations period (consistent with the allegations alleged in the Petition). As
discussed earlier, however, Program claimants can no longer invoke the fact that an attorney was
compelled to file the case at the limitations cut-off to excuse an incomplete review of the case's
objective basis at that time. *Simmons*, 875 F.3d at 636 ("Whether there is a looming statute of
limitations deadline, however, has no bearing on whether there is a reasonable factual basis 'for
the claim' raised in the petition.").

The second deficiency with the claim's timeliness pertains to onset. The record does not
support the conclusion that K.S.B.'s symptoms began on or after August 14, 2015 (three years
before filing of the case). On the contrary – not only does the record suggest symptoms were
evident throughout 2015, but likely *predated* the December 2014 vaccination. Nor does the record
reveal evidence of an aggravation of allegedly neurologic symptoms only after August 2015.
However the claim is defined, it was untimely filed, and therefore properly dismissed on that basis.

## III.   Petitioners' Claim Lacked Reasonable Basis

Petitioners argue that there was sufficient objective evidence in the record to support their
claim both prior to and after its filing, which continued up to the time Petitioners requested
voluntary dismissal of the claim. Fees App. at 2-3. Specifically, counsel maintains that the medical
records (including physician statements), scientific literature, and Program case law all provided
objective evidence supportive of Petitioners' claim. *Id.* at 3-4; Reply at 2. However, a careful

review of the medical records and submitted information reveals that none of these cited reasons provide a reasonable basis for the claim, when viewed as a direct causation-in-fact claim or significant aggravation.

The medical records establish that K.S.B. was arguably experiencing PANDAS symptoms prior to his receipt of the flu vaccine in December 2014 (e.g., ODD and OCD behaviors). *See, e.g.*, Ex. 4 at 4; Ex. 5 at 9; Ex. 10 at 22-24. He was also diagnosed with strep throat at least *four* times prior to his receipt of the vaccine. *See* Ex. 13 at 9; Ex. 5 at 50. Accordingly, if the sole allegation in this Petition were that the December 2014 flu vaccine *caused* his PANDAS, the claim would plainly lack reasonable basis, as the record contradicts such an allegation. Admittedly, the records before me do not mention a PANDAS diagnosis until December 30, 2014 (subsequent to K.S.B.'s receipt of the flu vaccine). Ex. 13 at 9. But the records also incorporate the existence of PANDAS-related symptoms, many of which K.S.B. experienced prior to vaccination (and multiple strep diagnoses beginning in July 2014). *Id.* The record thus does not support Petitioners suggestion that K.S.B.'s PANDAS manifested only after his receipt of the 2014 flu vaccine.

As noted above, however, there is more to the Petition than the claim involving the initial onset of PANDAS. The Petition *also* includes (in the alternative) a significant aggravation claim based on the same flu vaccine administered in December 2014 *See* Pet. at 1-2. Thus, Petitioners argue that the 2014 vaccine caused an exacerbation of K.S.B.'s PANDAS symptoms in September 2015 (over *eight* months post vacation). *Id.* But this argument flies in the face of the actual record. As I noted during the preliminary status conference in the case, there were many obvious gaps in the medical records during which K.S.B. experienced episodes of strep (with accompanying OCD behaviors) – and in *no case* were these problems associated with vaccination by any treater. Even the most cursory review of the records would inform counsel of this. Indeed, K.S.B.'s treaters routinely related his PANDAS diagnosis to the multiple episodes of strep throat revealed in the record. *See, e.g.*, Ex. 13 at 1-14; Ex. 10 at 29-32; Ex. 14 at 85-89, 99-101; Ex. 6 at 1-2. Clearly, the worsening of symptoms he experienced throughout his course were directly attributable to these episodes.

Similarly, there does not appear to be *any* temporal connection between K.S.B.'s December 1, 2014, vaccination and the alleged aggravation. Although K.S.B. had manifested behavioral issues by that time, the record reflects that his treating physicians believed that these were most likely related to his recurrent strep throat (as I noted earlier). Indeed, K.S.B.'s filed records indicate he received a formal diagnosis of PANDAS around the end of December 2014. It was not until September 2015, approximately <u>eight months</u> after the December 2014 vaccine, that Petitioners alleged K.S.B. experienced a worsening of symptoms (around which time his treaters noted an episode of strep with a PANDAS flare). *See* Ex. 10 at 31-32; Ex. 13 at 5; Ex. 14 at 85. But counsel cannot rely solely on the subjective statements made by Petitioners (in their Petition or filed affidavits) as persuasive objective evidence. *See, e.g.*, *Chuisano*, 116 Fed. Cl. at 291 (petitioner's affidavit detailing "subjective belief" of vaccine injury did not constitute objective evidence); *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec.

Mstr. Jan. 2, 2018) (reasonable basis existed where counsel relied *not* on statements made by the petitioner, but on "actual objective record proof") (emphasis added). Counsel should have reasonably understood that the temporal relationship between K.S.B.'s vaccination and this injury would be a major hurdle to overcome. Overall, there is nothing in the medical records which indicates that K.S.B.'s receipt of the flu vaccine caused him any harm, or that any of the injuries and/or disorders that K.S.B. suffers from were attributable to his receipt of the flu vaccine.

Also unavailing is Petitioners' contention that preliminary consultations with a medical professional provided a reasonable basis for proceeding with the claim. *See* Fees App. 4; Reply at 4. As the billing record indicates, counsel did indeed reach out to at least one doctor concerning their opinion on the facts of this case. Ex. 1 to Fees App. at 1. However, it is unclear what information or medical records (if any) were provided to this doctor in order for her to form a preliminary opinion, and Petitioners have not offered any statements or evidence from this individual suggesting that the theory she sought to substantiate had any medical validity.

The medical article submitted by Petitioners in support of their claim is similarly unhelpful. *See* D. Leslie, et al., *Temporal Association of Certain Neuropsychiatric Disorders Following Vaccination of Children and Adolescents: A Pilot Case—Control Study*, Front. Psychiatry (2017), doi:10.3389/fpsyt.2017.00003, filed as Ex. 8 (ECF No. 1-10) ("Leslie"). Using claims data, the article documented new onset neuropsychiatric disorders (i.e., OCD, anorexia nervosa, tics, ADHD, depression, and anxiety disorders) in children ages six to fifteen between 2002 through 2007, and determined that vaccination *may* be temporally associated with their development. Leslie at 1, 5-6. The article does *not*, however, discuss PANDAS specifically (which, *is by nature* associated with a strep infection). And the authors in Leslie clearly acknowledged that antecedent viral infections (which were not accounted for in the study) can increase the risk of neuropsychiatric disorders (as is clearly what occurred in K.S.B.'s case). *See* Leslie at 6. I thus cannot find that this article alone establishes a reasonable basis for the claim (especially in light of the overall medical record – which plainly establishes the vaccine played no role in K.S.B.'s development or recurrence of PANDAS).[11]

All in all the medical records (or treater statements) do not corroborate Petitioners' assertion that K.S.B.'s 2014 flu vaccine played a role in the initiation or aggravation of PANDAS. And Petitioners have not offered persuasive scientific or medical substantiation for their theory (as applied to the facts herein).

---

[11] Moreover, I have uncovered no instances in which a special master has found that a vaccine caused, or significantly aggravated, a petitioner's diagnosis of PANDAS (and attempts by petitioners to propose that the condition is akin to a vaccine-induced injury have been found unpersuasive). *See, e.g.*, *J.M. v. Sec'y of Health & Human Servs.*, No. 02-10V, 2017 WL 7409771, at *51-52, *66 (Fed. Cl. Spec. Mstr. Aug. 31, 2017). Even so, as I noted earlier, the overall record (as it pertains to the facts of this case) does not establish that the K.S.B.'s receipt of the flu vaccine caused or significantly aggravated his symptoms.

The significant deficiencies in this claim – the fact that onset of symptoms (whether new or aggravated) not only occurred too long after vaccination to be medically reasonable, but also rendered the claim self-evidently untimely even as of the date counsel was first contacted by Petitioners to consider bringing it – should have been taken into account. Objectively this claim was not tenable and should not have been filed. Although the Program employs a generous fees provision to encourage counsel to take cases (in order to in turn allow claimants a full and fair opportunity to litigate vaccine injury claims), there are limits to that generosity, as recognized by the Federal Circuit in cases like *Simmons*. Here, counsel (through some research into Vaccine Program requirements and decisions) could have ascertained the claim lacked a reasonable basis before its initiation, and his failure to do so fairly results in a denial of fees.

In sum, the totality of the circumstances reflects that the record is devoid of objective support for the claim's reasonable basis.

## CONCLUSION

For all of the reasons stated above, I conclude that Petitioners have failed to establish that there was a reasonable basis for the claim for which the petition was brought. Accordingly, I find that an award of attorney's fees and costs to Petitioners is unreasonable, and their motion is **DENIED**. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[12]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.